UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TENLEY MCLAUGHLIN GOOD,

        Plaintiff,                                 Case No. 18-cv-11260
                                                    Honorable Thomas L. Ludington

v.

BIOLIFE PLASMA SERVICES, L.P.,
SHIRE US INC.

        Defendants.
_____/

**ORDER DENYING PLAINTIFF'S MOTION TO AMEND AND DENYING
DEFENDANT'S MOTION FOR A SURREPLY**

On March 23, 2018, Plaintiff filed a complaint in the Circuit Court of Isabella County,
Michigan, which Defendants removed to this Court on April 20, 2018. ECF No. 1. Plaintiff
alleges that she sustained injuries while donating blood plasma at Defendants' facility.
Specifically, after her finger was pricked by Defendants' personnel, Plaintiff fell off of a stool
and hit her head. She asserts one count of medical malpractice and one count of negligence,
alleging that Defendants should have "positioned her in a safe chair or cot/gurney with protective
restraining components to eliminate the risk of injury during a fainting or dizzy spell." *Id.* ¶ 21.

The case management and scheduling order set a deadline of October 29, 2018 for
Plaintiff's expert disclosures. ECF No. 9. Pursuant to the parties' subsequent stipulation, that
deadline was extended to December 14, 2018. ECF No. 12. Although subsequent stipulations
were entered which extended other case management deadlines (including an extension of
discovery until April 5, 2019), none of the subsequent stipulations extended the expert disclosure
deadline. Accordingly, Plaintiff's expert disclosure deadline was December 14, 2018.

On June 3, 2019, Plaintiff filed a "motion for amendment to the case management and scheduling order to allow for addition of Dr. Richard M. Chesbrough as an Expert Witness." ECF No. 20. Plaintiff contends that the untimely addition of Dr. Chesbrough is warranted because Defendants submitted an unanticipated supplemental report of defense expert Dr. Wald on April 5, 2019 (the last day of discovery) which contained novel conclusions regarding the imaging of Plaintiff's head. Plaintiff contends that the unanticipated supplemental report of Dr. Wald provided good cause for her to retain a radiologist (Dr. Chesbrough) and serve his report on Defendants. Alternatively, Plaintiff asks that if she is not permitted to offer Dr. Chesbrough's testimony in support of her case-in-chief, that he nevertheless be permitted as a rebuttal witness.

## I.

If a party does not comply with the requirements of Rule 26(a) or (e), then it is subject to the automatic and mandatory sanction of Rule 37(c)(1). *See Dickenson v. Cardiax and Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004). Rule 37(c)(1) provides, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* A harmless violation is one that involves an honest mistake, combined with sufficient advance knowledge by the adversary. *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 783 (6th Cir. 2003). The burden to establish justification and harmlessness is on the party facing sanctions and the "the sanction of exclusion is automatic and mandatory" if that party fails to carry its burden. *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998). "District courts have broad discretion to exclude untimely disclosed expert-witness testimony." *Pride v. Bic Corp.*, 218 F.3d 566, 578 (6th Cir.2000).

**II.**

Plaintiff summarized the dispute between Dr. Wald and Dr. O'Hara as follows:

> Both Dr. Wald and Dr. O'Hara offered (conflicting) expert opinions on the interpretation of Ms. Good's radiology imaging and whether Ms. Good's sudden hearing loss following her October 8, 2015 accident was caused by a basilar skull fracture she suffered as a result of her fall, in the subject incident.

In short, although both doctors agree that no basilar skull fracture was visible on the imaging, Dr. O'Hara nevertheless concluded (for other reasons) that Plaintiff did indeed suffer a basilar skull fracture. Dr. Chesbrough (the radiologist who Plaintiff did not timely disclose), agreed with Dr. O'Hara.

On January 17, 2019, Defendant furnished Plaintiff Dr. Wald's expert report. ECF No. 21-2. Dr. Wald's report notes that he reviewed the CT and MRIs of Plaintiff's head dated 10/8/15, 10/9/15, 11/11/15, and 2/9/16. *Id.* PageID.153. Dr. Wald's report states in relevant part:

> An inner ear infection may have contributed to hearing loss even after the infection had resolved. Subsequent extensive audiologic and otolaryngology evaluation found no alternative explanation, and *no skull fractures were found*. In other words, there is no objective evidence or pathology suggesting that the fall is related to her reports of hearing loss.

*Id.* (emphasis added).

On March 5, 2019, Dr. O'Hara was deposed and testified in relevant part:

> A: it was my opinion that she had suffered an injury to her head, probably involving what we call basilar skull fracture, *although we were not able to actually visualize one on the imaging studies*, the CAT scans or the MRI scans. Often a small fracture at the base of the skull is not visualized on the imaging studies because the anatomy is so complex there. But it appeared – it was my opinion that she had fallen, suffered an injury to the base of the skull on the left side involving the mastoid sinuses, and that the fluid that was seen in the mastoid sinuses on the initial CAT scan was most likely some fluid related to a basilar skull fracture in the area of the mastoid sinus.
> …
> Again, I never actually identified a fracture, but, you know, it looks like she probably had a fracture through the left mastoid sinuses, very close to the ear, so
> …

Again, that's a supposition.

O'Hara Dep. at 21, 37, ECF No. 22-1, PageID.240, 244.

On April 5, 2019, Dr. Wald served a supplemental report dated April 4 in response to Dr.

O'Hara's deposition. The report states in relevant part:

> As I wrote in my report, there is no evidence that Ms. Good sustained a skull fracture of any kind on October 8, 2015. Regarding Dr. O'Hara's statements in particular there is no evidence of a basilar skull fracture on imaging studies. Further, medical records do not reflect that Ms. Good displayed the signs one would expect to see in a patient with a basilar skull fracture. Also, the fracture Dr. O'Hara supposes is an occult fracture too small to be seen on diagnostic films. Such a fracture would not cause conductive hearing loss (the diagnosis concluded by the audiologist and otorhinolaryngologist at the University of Michigan) or damage to the eight cranial nerve, the nerve involved in hearing; in fact that audiologist and otorhinolaryngologist did not diagnose sensorineural hearing loss, the type expected if there were an eight cranial nerve injury.
>
> Nothing about the testimony of Dr. O'Hara changes the opinions expressed in my January 17, 2019 report.

Wald Supp. Rep., ECF No. 21-4, PageID.179.

Plaintiff now moves for an extension of the December 14, 2018 expert disclosure

deadline to name Dr. Chesbrough, a radiologist, who she retained in response to Dr. Wald's

April 4 supplemental report. Dr. Chesbrough's report, dated May 29, 2019, states in relevant

part:

> 4. The study of 10/8/15 (1:45 PM) shows a small amount of soft tissue within the left mastoid air cells, in addition to an air fluid level in the left sphenoid sinus.
> 5. The second study of 10/8/15 (5:33 PM) reveals increased soft tissue density (most likely blood) within the left mastoid air cells, as well as slight increase in soft tissue within the left sphenoid sinus. There are now a few small "dots" of air outside of the mastoids, within the left posterior fossa. These findings are highly concerning for skull fracture in the left base-of-skull region (*although the actual fracture line is not clearly seen*). In retrospect, the soft tissue density in the left mastoid air cells (CT of 10/8/15 at 1:45 PM) was likely blood, due to basilar skull fracture (although the posterior fossa air collections were not evident)
> . . .
> 8. The head CT's are essential definitive for a left skull-base fracture (basilar skull fracture). *However, the protocol for these head CT's does not have the level of*

*detail needed to see the actual fracture line*. To see this, one would likely have needed a dedicated temporal bone CT, using high-detail algorithms to detect subtle fracture lines and much finer bone detail. However, the identified findings – blood in the left mastoids and air in the left posterior fossa – are clear (indirect) evidence of fracture. Given the clinical history of this patient there is really nothing else that could account for these CT findings.

Chesbrough Rep., ECF No. 20-1, PageID.108-109.

## III.

Plaintiff's motion is predicated on her purported need to counter the unexpected, last minute supplemental report of Dr. Wald which was served on April 5 (the last day of discovery), in which he stated that there was no evidence of basilar skull fracture. Dr. Wald's supplemental report is not a justification for Plaintiff's delay in retaining and disclosing Dr. Chesbrough as an expert. The dispute about the presence/absence of evidence of a basilar skull fracture on the CTs and MRIs was not a novel issue raised by Dr. Wald in his supplemental report. Indeed, Dr. O'Hara, Plaintiff's treating neurosurgeon, had already testified at length on March 5 regarding the head imaging, explaining: 1) that he did not see a basilar skull fracture on the imaging; 2) that the complexity of the basilar skull anatomy makes it difficult to see such fractures; and 3) that he nevertheless concluded that Plaintiff suffered a basilar skull fracture because of the presence of mastoid fluid and the lack of clinical history of any ear problems that might provide an alternative explanation for the mastoid fluid (such as mastoiditis). O'Hara Dep. at 21, 37, ECF No. 22-1, PageID.240, 244, 253. Plaintiff's untimely disclosure of Dr. Chesbrough is not substantially justified.

Nor is the untimely disclosure harmless, as there is no reason to believe it was an honest mistake or that Defendant had sufficient advance notice of Plaintiff's intention to produce a radiology expert. *See Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 783 (6th Cir. 2003) ("a harmless' violation involves an honest mistake on the part of a party coupled with

sufficient knowledge on the part of the other party.") (internal quotations omitted). Accordingly, Rule 37(c) requires that his expert testimony be excluded for non-compliance with Rule 26.

Plaintiff asks that if the Court does not permit her to call Dr. Chesbrough's as a witness in support of her case-in-chief, that he still be permitted to testify as rebuttal witness. The Court cannot, in the context of deciding the current motion, preemptively rule on every potential subject of rebuttal testimony that might arise at trial. Suffice it to say that Dr. Chesbrough's report does not set forth "rebuttal" evidence under Fed. R. Civ. P. 26(a)(2)(D)(ii), which is limited "to that which is precisely directed to rebutting new matter or new theories presented by the defendant's case-in-chief." *Step-Saver Data Sys. Inc. v. Wyse Tech*, 752 F. Supp. 181, 193 (E.D. Pa. 1990). Dr. Chesbrough's report is not precisely directed at rebutting new matter or theories in Dr. Wald's April 4 supplemental report. Rather, Dr. Chesbrough's report is largely duplicative of Dr. O'Hara's March 5 deposition testimony. Much like Dr. O'Hara, Dr. Chesbrough opined that, although the CT and MRI imaging does not contain sufficient detail to reveal a fracture line,[1] the presence of mastoid fluid is indicative of a basilar skull fracture. Dr. Chesbrough's report is nothing more than an attempt to corroborate or bolster Dr. O'Hara's deposition testimony.[2] It is not a rebuttal to Dr. Wald's supplemental report.[3] Thus, if Dr. Wald testifies to the matters set forth in his supplemental report, the content of Dr. Chesbrough's report would not be a proper subject for rebuttal testimony.

---

[1] And on this point, it is clear that all three doctors are in agreement.

[2] Defendant separately argues that Dr. O'Hara's deposition testimony goes beyond the scope of a treater/fact witness and into the realm of retained expert opinion requiring a report, insofar as Dr. O'Hara's notes did not discuss a basilar skull fracture, and his opinion about the presence of such a fracture may not have been developed during his treatment of Plaintiff. This issue is not properly before the Court for adjudication, as Defendant raised it in a response brief, and has not filed a standalone motion to limit the scope of Dr. O'Hara's testimony.

[3] Notably, it is not clear that Dr. Wald's supplemental report is a proper supplement under Rule 26(e)(1)(A), which requires supplementation "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Dr. Wald's supplemental report does not purport to correct a mistake or omission in the previous report in light of Dr. O'Hara's testimony. To the contrary, Dr. Wald's supplemental report states that "Nothing about the testimony of Dr. O'Hara changes the opinions I express in my January 17, 2019 report."

**III.**

Accordingly, it is **ORDERED** that Plaintiff's motion to amend the scheduling order, ECF No. 20, is **DENIED**.

It is further **ORDERED** that Defendant's motion for a surreply, ECF No. 23, is **DENIED** as moot.

 s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: July 18, 2019