UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TENLEY McLAUGHLIN GOOD,

                Plaintiff,                Case No. 1:18-cv-11260
v.                                          Honorable Thomas L. Ludington
                                                   Magistrate Judge Patricia T. Morris

BIOLIFE PLASMA SERVICES, L.P., et al.,

                Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERTS IN PART AND SCHEDULING *DAUBERT* HEARING**

This matter is before the Court pursuant to Defendants' Motion to Exclude the Testimony of Sean T. Stanley and Nancy Erickson.[1] ECF No. 115. This action arises from an October 2015 incident where Plaintiff fainted while giving a capillary blood sample at Defendants' plasmapheresis center and was thereby injured. Plaintiff seeks to offer the testimony of Mr. Stanley and Ms. Erickson to support her theory that Defendants' seating arrangement for capillary sampling and alleged failure to take her medical history was breached the standard of care owed to her. Defendants argue that the testimony of Mr. Stanley and Ms. Erickson should be excluded as inadmissible under Federal Rule of Evidence 702 or as a sanction for violating Federal Rule of Civil Procedure 26(a)(2). For the reasons set forth below, Defendants' Motion will be denied in part as to the request to exclude the testimony as a sanction. A *Daubert* hearing will be scheduled for the purpose of further examining Mr. Stanley's and Ms. Erickson's opinions and the reasoning supporting those opinions.

---

[1] Nancy Erickson's name has changed to Nancy Glasgow-Roberts. ECF No. 134 at PageID.10378 n. 1. For ease of reference and continuity with prior orders, she is referred to as "Ms. Erickson" herein.

# I.

## A.

On March 23, 2018, Plaintiff Tenley McLaughlin Good filed a complaint alleging medical malpractice and negligence by Defendants BioLife Plasma Services, L.P. and its parent company Shire Pharmaceuticals a/k/a Shire US, Inc. ECF No. 1 at PageID.11–12. The case arises from an October 8, 2015 incident where Plaintiff lost consciousness while giving a capillary sample at Defendants' plasma donation facility.[2] ECF No. 91 at PageID.8878. After losing consciousness, Plaintiff fell out of the chair she was sitting in, hit the ground, and injured her head. *Id.* at PageID.8878–79.

In August 2019, the parties filed cross-motions for summary judgment. After considering voluminous briefing from the parties, including a round of supplemental briefs, this Court entered summary judgment for Defendants and dismissed the Complaint on February 13, 2020. ECF No. 91. The United States Court of Appeals for the Sixth Circuit, however, reversed this Court's entry of summary judgment and remanded for further proceedings. ECF No. 103. The Sixth Circuit found that triable issues of fact precluded summary judgment on Plaintiff's "negligent medical history" and "negligent positioning" theories. *Id.* at PageID.8969–71.

The Sixth Circuit opinion addressed the question of negligence as though it were entirely within the scope of lay opinion, thus suggesting no particular need for expert testimony. In addressing the question on the motions for summary judgment and applying the Hand Formula, this Court found that the probability of injury of this type was very low and subject to empirical assessment. Indeed, Plaintiff initially plead the case as involving malpractice, though the malpractice claim was later dismissed by stipulation. ECF No. 35.

---

[2] The background of this case is discussed at length in this Court's summary judgment opinion. *See* ECF No. 91 at PageID.8873–79

Shortly after the mandate issued on December 15, 2020, Plaintiff filed a motion for a jury trial. ECF No. 105. Plaintiff's motion was granted, and the remaining dates in the case were rescheduled. ECF No. 109. On May 4, 2021, the parties filed several motions in limine, which remain pending. *See* ECF Nos. 111–16.

**B.**

Defendants' Motion in Limine concerns the testimony of two experts, Stanley T. Nelson and Nancy Erickson.

**1.**

According to his curriculum vitae, Mr. Stanley is a registered phlebotomy technician and the Manager of Field Operations at Shiel Laboratories in New Jersey. ECF No. 115-4 at PageID.9209–10. Mr. Stanley's initial expert report was a two-page personal declaration where he identified, in rather conclusory terms, several ways that Defendants had "breached the applicable standards of care," based on his "training, education, and experience":

- Failing to take a history of Tenley Good prior to any finger poke to ascertain among other things any history of fainting in similar circumstances;

- Failing to recognize and appreciate that Ms. Good was nervous, which can contribute to a syncopal episode;

- Failing to place Ms. Good in a safe environment at the time of the finger poke, which would not be on a high stool across a counter from the person performing the finger poke, and should have been in a standard height chair with components on all sides to confine her in the event of dizziness or fainting;

- Failing to safe guard Ms. Good at the time of the finger poke by not having the technician in her immediate presence and able to immediately react and restrain Ms. Good in the event of dizziness or fainting; . . . .

ECF No. 115-2 at PageID.9190–91. Mr. Stanley stated that he formed these opinions after reviewing the deposition transcripts of Amy Parks and Sylvia Roberts—two fact witnesses—the deposition exhibits of Ms. Roberts, "McLaren Bay Region records," and a "picture of the chair"

that Plaintiff was sitting in at the time of her capillary sample. ECF N. 115-2 at PageID.9189–90. He did not explain how this information or his expertise led him to his conclusions.

Counsel for Defendants deposed Mr. Stanley on March 29, 2019. During the deposition, Mr. Stanley offered an additional opinion that had not been disclosed in his report: Defendants were negligent for collecting the capillary sample in a chair that "swiveled." ECF No. 115-3 at PageID.9203 (Mr. Stanley's deposition transcript).

**2.**

Ms. Erickson is a certified phlebotomist with over 20 years of experience in "blood collecting" and over 15 years of experience in "teaching blood collection procedures at the University level." ECF No. 115-5 at PageID.9212. Ms. Erickson's initial expert report was almost identical to Mr. Stanley's in both content and form. The only difference was that Ms. Erickson's report offered the additional opinion that Defendants were negligent for "[f]ailing to abide by the Clinical and Laboratory Standards Institute GP41." ECF No. 115-7 at PageID.9236 (Ms. Erickson's expert report). The report, however, did not describe the CLSI GP41 or how it applied to the case. By its own terms, the CLSI GP41, subtitled "Collection of Diagnostic Venous Blood Specimens," is an 83-page document purporting to "establish[] criteria for suitable venous blood specimen for medical laboratory testing." ECF No. 115-9 at PageID.9278 (CLSI GP41).

During her deposition, Ms. Erickson, like Mr. Stanley, opined that Defendants were negligent for placing Plaintiff in a chair that "swiveled." ECF No. 115-6 at PageID.9226 (Ms. Erickson's deposition transcript). She also testified that the chair Defendants used for capillary sampling lacked "adequate support" for the donor as required by Clinical and Laboratory Standards Institute GP42—another guidance document, similar to CLSI GP41, that purports to

"describe[] general procedures for collecting diagnostic capillary blood specimens." *Id.* at PageID.9227; ECF No. 115-10 at PageID.9376 (CLSI GP42).

### C.

Concurrent with her response to the pending Motion in Limine, Plaintiff filed another set of expert reports for Mr. Stanley and Ms. Erickson that she characterized as "supplemental disclosures." ECF No. 125 at PageID.10120. Both reports are substantially longer than the originals—seven pages for Mr. Stanley and ten for Ms. Erickson—and offer greater detail regarding their opinions and the basis for them. *See* ECF No. 125-2 (Mr. Stanley's supplemental report); ECF No. 125-3 (Ms. Erickson's supplemental report). Both reports also disclose additional materials that were reviewed by the experts, including additional deposition transcripts and phlebotomy literature. ECF No. 125-2 at PageID.10137–38; ECF No. 125-3 at PageID.10146–47.

The central conclusions of both experts, however, have remained essentially the same: Defendants were negligent for failing to inquire about previous adverse reactions from blood draws and for seating Plaintiff in a chair that was, for various reasons, unfit for collecting a capillary sample.

### II.

Defendants argue that the testimony of Mr. Stanley and Ms. Erickson should be excluded because their opinions are not based on reliable methodology as required by Federal Rule of Evidence 702. Because the record is insufficient to assess the admissibility of the testimony at issue, a *Daubert* hearing will be scheduled.

Federal Rule of Evidence 702 provides,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Accordingly, for "expert testimony to be admissible, the court must find the expert to be: (1) qualified; (2) her testimony to be relevant; and (3) her testimony to be reliable." *United States v. LaVictor*, 848 F.3d 428, 441 (6th Cir. 2017).

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court explained that Rule 702 tasks the district court with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"—a task that the Court likened to a "gatekeeping role." *Id.* at 597. While the Supreme Court declined to set out any "definitive checklist or test" for assessing the reliability of testimony, *id.* at 593, it did identify several factors that should be considered. These factors include (1) whether the "theory or technique" can be tested, (2) "whether the theory or technique has been subjected to peer review and publication," (3) "the known or potential rate of error in using a particular scientific technique," and (4) "whether the theory or technique has been generally accepted in the particular scientific field." *United States v. Bonds*, 12 F.3d 540, 558 (6th Cir. 1993) (discussing *Daubert*, *supra*).

Since the *Daubert* factors were announced, however, the Sixth Circuit has explained that "district courts need not adhere to [them], as '[t]he inquiry . . . is a flexible one.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007) (quoting *Daubert*, 509 U.S. at 594). "Indeed, 'the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *Id.* (quoting

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). In cases where expert testimony is premised on certain training or practical experience, as opposed to empirical testing, the *Daubert* factors may prove "unhelpful." *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (finding *Daubert* factors unhelpful where expert's testimony was based on his "own practical experiences throughout forty years in the banking industry").

In this case, Defendants argue that the testimony of Mr. Stanley and Ms. Erickson should be excluded because it lacks a reasonable factual basis and is otherwise unreliable. Defendants' principal argument is that while Mr. Stanley and Ms. Erickson purport to rely on their training and practical knowledge, their experiential knowledge cannot provide a reliable basis for their opinions because they have no experience in the field of plasma donation. Indeed, neither expert has worked in a plasma donation center or appears to have any firsthand knowledge as to how those centers are operated. *See* ECF No. 115 at PageID.9166–72.

However, it remains uncertain whether the practical knowledge and experience of Mr. Stanley and Ms. Erickson might nevertheless provide a reliable basis for their testimony. When the case was initially filed, Plaintiff's first count was for medical malpractice. *See* ECF No. 1 at PageID.11. Though the malpractice count may have been erroneous—hence the subsequent joint stipulation to dismiss—it was not without intuitive force. In many respects, plasma donation, without further medical explanation, would seem largely indistinguishable from blood collections in the medical setting. Whether for donation or medical testing, the collection of blood and its constituent parts necessarily involves the application of a minimum level of specialized knowledge. And like the typical medical patient at a diagnostic facility, the typical plasma donor must rely on the expertise of the donation facility in designing and administering a safe collection procedure. With this perspective, it is unclear why Mr. Stanley and Ms. Erickson, who seem to

possess substantial experience with the medical blood collection, would be unable to reliably testify, based upon their training and experience, as to how a reasonable plasma donation center would have collected a capillary sample.

Apart from the reliability of the proposed testimony, an equally fundamental question remains unclear: whether the testimony would be "helpful" for the jury for purposes of Rule 702. The lone count in this case is for simple negligence, and in Michigan, a plaintiff need not introduce expert testimony to get to the jury or prevail on such a claim, though they must in a malpractice case. *See Lince v. Monson*, 108 N.W.2d 845, 847 (Mich. 1961) ("In the ordinary negligence case a question is presented whether an ordinary, careful and prudent person would have done as defendant did under the circumstances. Presumably a jury of 12 persons, drawn from and representing a cross section of the community, is competent to judge that question . . . ."); *see also Bryant v. Oakpointe Villa Nursing Ctr.*, 684 N.W.2d 864, 872 (Mich. 2004) (distinguishing between medical malpractice claims which require expert testimony and ordinary negligence claims which are "within the realm of a jury's common knowledge and experience"). Furthermore, when examining the causation issue on appeal, the Sixth Circuit held that the lay testimony of Sylvia Roberts, who testified that Plaintiff swiveled in her chair and then fell, would allow a reasonable jury "to conclude that the chair's swivel caused [Plaintiff] to fall." *Good v. BioLife Plasma Servs., L.P.*, 834 F. App'x 188, 199 (6th Cir. 2020). The question therefore is whether there are any facts that Plaintiff must prove that would be better understood with the testimony of Mr. Stanley and Ms. Erickson.[3]

---

[3] Of course, the testimony might still be "helpful" even if unnecessary to Plaintiff's prima facie case. Regardless, "[i]t is well established that an expert witness's testimony is not helpful where the jury has no need for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic." *Jones v. Pramstaller*, 874 F. Supp. 2d 713, 720 (W.D. Mich. 2012) (internal quotation marks omitted). Similarly, testimony that does no more than "tell the jury what result to reach and which runs the risk of interfering with a district court's jury instructions, hardly can be viewed

While a "district court is not obligated to hold a *Daubert* hearing," *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000), "a district court should not make a *Daubert* determination when the record is not adequate to the task," *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000). The parties have now had two separate opportunities during the case to contest the admissibility of the proposed testimony. Even so, the evidentiary record consists only of the expert reports provided by Plaintiff and fragments from the depositions of Mr. Stanley and Ms. Erickson. "The fundamental objective when considering the admissibility of expert testimony is to ensure the reliability and relevancy of that testimony." *Barreto*, 268 F.3d at 335 (internal quotation marks omitted). Upon the current record, this Court can ensure neither.

For the foregoing reasons, a *Daubert* hearing will be scheduled for October 13, 2021 at 2:00 P.M. Plaintiff is expected to make Mr. Stanley and Ms. Erickson available at the hearing for examination by opposing counsel and this Court.

### III.

Defendants alternatively argue that the testimony of Mr. Stanley and Ms. Erickson should be excluded because their expert reports were inadequate under Federal Rule of Civil Procedure 26(a)(2). Defendants' argument will be rejected because, despite the deficiency of the reports, the subsequent depositions and the future *Daubert* hearing will have rendered Plaintiff's violation of Rule 26(a)(2) harmless.

Under Rule 26(a)(2), a party is required to disclose the identity of each expert witness it may call at trial along with a report summarizing the expert's qualifications, opinions, and other information. Specifically, the expert report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

---

as being helpful to the jury." *Jesa Enterprises Ltd. v. Thermoflex Corp.*, 268 F. Supp. 3d 968, 973 (E.D. Mich. 2017).

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). With respect to the expert's opinions and basis for them, "[e]xpert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n. 6 (7th Cir.1998)). "[A]n expert opinion must 'set forth facts' and, in doing so, outline a line of reasoning arising from a logical foundation." *Id.* (quoting *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 657 (6th Cir.2005)).

Under Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The official commentary to Rule 37 "strongly suggests" that a "harmless" violation consists of an "honest mistake" by a party and "sufficient knowledge" by its opponent. *See Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 783 (6th Cir. 2003). In determining whether a violation was substantially justified or harmless, courts should consider:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015). "[T]he burden is on the potentially sanctioned party to prove harmlessness." *Roberts ex rel. Johnson*, 325 F.3d at 782.

The initial reports were deficient for two fundamental reasons. First, both reports listed a series of conclusory opinions without explaining "how" or "why" those opinions were reached. See *R.C. Olmstead, Inc.*, 606 F.3d at 271. For example, both reports claimed that Defendants were negligent for situating Plaintiff in a "high stool"[4] during the capillary sample without stating how or why doing so was a breach of the standard of care and how their "experience" informed that conclusion.

Second, both reports lacked information regarding the expert's rate of compensation. Additionally, Ms. Erickson's report lacked identifying information regarding previous testimony she had provided.

The initial reports served by Plaintiff were therefore deficient for purposes of Rule 26(e)(2). And contrary to Plaintiff's assertion, the supplemental reports do not cure this deficiency.[5] While Rule 26(e) requires parties to supplement their expert reports, "[s]upplementation should not apply where the purpose is 'to bolster or submit additional expert opinions'" and "does not cover failures of omission because the expert did an inadequate or incomplete preparation." *Bowles v. City of Mansfield*, No. 1:07CV2276, 2008 WL 11480485, at *2 (N.D. Ohio Nov. 21, 2008) (quoting *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D. N.C. 2002)).

---

[4] The use of the term "stool" was clearly incorrect as the picture of the furniture that Plaintiff was seated in depicts a chair with a backrest and armrests on both sides. *See* ECF No. 115-8 at PageID.9251.

[5] The supplemental reports did, however, identify the compensation rate for both experts and the former testimony of Ms. Erickson. *See* ECF Nos. 125-2, 125-3.

Nevertheless, Plaintiff persuasively argues that her violation of Rule 26(a)(2) was harmless because there is virtually no possibility of surprise at trial. First, defense counsel deposed both experts after the initial reports were disclosed. While the disclosure obligations under Rule 26(a)(2) serve to prevent an "ambush at trial" and to "shorten or decrease the need for deposition," *R.C. Olmstead, Inc.*, 606 F.3d at 271, courts of this circuit have repeatedly held that "those concerns can become moot when a deposition is actually taken," *United States v. Roberts*, 830 F. Supp. 2d 372, 387 (M.D. Tenn. 2011) (citing *E.E.O.C. v. Freemen*, 626 F.Supp.2d 811, 821 (M.D.Tenn.2009)); *accord Walter v. Auto-Owners Mut. Ins. Co.*, No. 3:15-CV-535-TAV-DCP, 2018 WL 3650284, at *14 (E.D. Tenn. Aug. 1, 2018) (finding harmless error where the expert's "deposition was actually taken" and the defendant "raised no concern that it [would] be prejudiced at trial based on an inability to adequately prepare for cross-examination"). The fact that Mr. Stanley and Ms. Erickson were deposed after their initial reports were served makes it quite unlikely that Defendants would be ambushed by some undisclosed opinion or rationale.

Moreover, any residual harm arising from the incomplete reports would surely be cured by the future *Daubert* hearing. *See Roberts*, 830 F. Supp. 2d at 387 (finding harmless error where the expert was deposed and "extensively questioned about the basis for his opinion during [a] *Daubert* hearing"). Indeed, the *Daubert* hearing will provide defense counsel with yet another opportunity to scrutinize the subject matter of, factual basis for, and reasoning behind the opinions that Mr. Stanley and Ms. Erickson intend to offer at trial.

The final three *Howe* factors do not suggest a different result. While the significance and admissibility of the testimony is yet to be decided, there is no reason to think its introduction would disrupt the trial or that the incomplete reports were the result of bad faith, rather than mere neglect.

Simply put, there is little reason to exclude expert testimony as a sanction for deficient expert reports when the experts were later deposed and will soon be made available for extensive questioning at a *Daubert* hearing. Accordingly, Defendants' Motion to Exclude will be denied in part as to the request that the testimony be excluded as a sanction under Rule 37.

**IV.**

Accordingly, it is **ORDERED** that Defendants' Motion to Exclude the Testimony of Sean T. Stanley and Nancy Erickson, ECF No. 115, is **DENIED IN PART** as to Defendants' request that the testimony be excluded as a sanction under Rule 37. This Court declines to rule on the admissibility of the testimony until after a *Daubert* hearing is conducted.

It is further **ORDERED** that the parties are **DIRECTED** to appear for a *Daubert* hearing regarding the testimony of Mr. Stanley and Ms. Erickson on **October 13, 2021 at 2:00 P.M**.

Dated: June 22, 2021                    s/Thomas L. Ludington
                                                                                      THOMAS L. LUDINGTON
                                                                                      United States District Judge