UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TENLEY McLAUGHLIN GOOD,

           Plaintiff,

v.

BIOLIFE PLASMA SERVICES, L.P. and
SHIRE US, INC.,

           Defendants.

Case No. 1:18-cv-11260

Honorable Thomas L. Ludington
United States District Judge

_____/

**OPINION AND ORDER DENYING DEFENDANTS' *DAUBERT* MOTION AND MOTION FOR LEAVE TO FILE SECOND MOTION FOR SUMMARY JUDGMENT**

This matter is before this Court upon Defendants' Motion to Exclude the Testimony of Sean T. Stanley and Nancy Erickson,[1] ECF No. 115, and Defendants' Motion for Leave to File Second Motion for Summary Judgment, ECF Nos. 124, 129.[2] For the reasons stated hereafter, both motions will be denied.

**I.**

This is a negligence action arising from a donor's injury at a plasma-donation center. In October 2015, Plaintiff Tenley McLaughlin Good visited a plasma-donation center operated by Defendant BioLife Plasma Services, L.P. ("BioLife"). *See Good v. Biolife Plasma Servs., L.P.*, No. 18-11260, 2020 WL 736005, at *3 (E.D. Mich. Feb. 13, 2020). During the donor-screening process, a BioLife employee pricked Plaintiff's finger to collect a small amount of blood known

---

[1] Ms. Erickson recently married and changed her surname to Glasgow-Roberts. ECF No. 134 at PageID.10378 n.1. For ease of reference and continuity, she is referred to as "Ms. Erickson" herein.
[2] Defendants neglected to state in their motion for leave whether they sought concurrence from Plaintiff, so they filed an otherwise identical amended motion for leave clarifying that they sought but did not obtain concurrence. *Compare* ECF No. 124 *with* ECF No. 129. Because the motions are materially identical, they are not analyzed separately.

as a capillary sample. *Id.* Plaintiff and the employee collecting her sample, Sylvia Roberts, were seated across from each other at a small counter. *Id.* at *4. Seconds after being pricked, Plaintiff fainted. *Id.* From across the counter, Roberts attempted to hold Plaintiff upright, but Plaintiff swiveled out of her chair and fell to the ground. *Id.* She spent a week in the hospital with post-concussive symptoms and now complains of hearing loss and personality changes. *Id.*

On March 23, 2018, Plaintiff filed a complaint against BioLife and its parent company, Shire Pharmaceuticals a/k/a Shire US, Inc., presenting two theories of liability[3]: First, she claims that Defendants negligently failed to take her medical history before collecting the capillary sample (the "negligent-history theory"). *See Good*, 2020 WL 736005, at *4. Had they done so, she argues, they would have learned that she had a history of fainting at the sight of blood and prevented her from donating. *See* Pl.'s Mot. for Partial Summ. J., ECF No. 37 at PageID.2527–28. Second, she claims that Defendants negligently positioned her for the capillary sample, because they sat her in a relatively high swiveling chair, and did not place Roberts close enough to prevent the fall (the "negligent-positioning theory"). *See Good*, 2020 WL 736005, at *4, *7.

In August 2019, the parties filed cross-motions for summary judgment. After reviewing the record, this Court found that Plaintiff's evidence was insufficient and therefore entered summary judgment for Defendants. First, this Court disregarded Plaintiff's affidavit stating that she was never asked about her medical history, because the affidavit seemed to contradict her earlier deposition testimony that she could not remember the "vein check."[4] *Id.* at *6. Second,

---

[3] Plaintiff also brought a claim for medical malpractice but later stipulated to its dismissal. *See* ECF Nos. 1 at PageID.11; 28.

[4] "Vein check" refers to a process in which a BioLife employee examines a potential donor's veins. *See Good v. Biolife Plasma Servs., L.P.*, No. 18-11260, 2020 WL 736005, at *2 (E.D. Mich. Feb. 13, 2020). Plaintiff's vein check was performed by Julida Reeves, who testified that it was her regular practice to ask the donor during the vein check about prior adverse reactions. *Id.*

after reviewing the parties' expert reports, this Court found that the probability of Plaintiff fainting was "so unlikely that failing to anticipate it was [not] a breach of the standard of care." *Id.* at *8.

On appeal, the Sixth Circuit Court of Appeals had a different view of the evidence. Regarding Plaintiff's negligent-intake theory, the Sixth Circuit found no "direct contradiction" between Plaintiff's deposition testimony and affidavit and therefore held that it was erroneous to disregard the affidavit. *See Good v. BioLife Plasma Servs., L.P.*, 834 F. App'x 188, 196 (6th Cir. 2020). As for Plaintiff's negligent-positioning theory, the Sixth Circuit concluded that the risk of fainting during capillary-sample collection was "small" but "foreseeable." *Id.* at 196–97. Therefore, according to the Sixth Circuit, a reasonable jury could have found that BioLife was negligent for not providing Plaintiff with a different chair. *Id.* at 198.

The Sixth Circuit also addressed the issue of causation because Defendants raised it as an alternative basis for affirming summary judgment. *Id.* at 198. Based on the expert reports and Roberts' testimony of the swiveling chair, the Sixth Circuit concluded that there was enough evidence for the jury to find that Defendants' conduct was the but-for and legal cause of Plaintiff's injury. *Id.* at 198–99. Accordingly, the Sixth Circuit reversed summary judgment for Defendants and remanded the case to this Court for further proceedings. *Id.* at 200.

In May 2021, Defendants filed a motion to exclude the testimony of Plaintiff's two expert witnesses, Sean T. Stanley and Nancy Erickson.[5] ECF No. 115. Relying on the seminal *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Defendants argue that Plaintiff's experts cannot offer scientifically reliable testimony because they lack experience with plasma donation. *See id.* at PageID.9178–85. Defendants also filed a motion for leave to file a second

---

[5] The parties also filed several motions in limine. *See* ECF Nos. 111–114; 116. Those motions remain pending and will be decided at a later date.

- 3 -

motion for summary judgment, arguing that this Court should resolve the causation issue as a matter of law after excluding Plaintiff's experts. ECF No. 124 at PageID.10106–08.

Despite the parties lengthy briefing, two lingering issues prevented this Court from resolving Defendants' *Daubert* Motion. The first was whether Mr. Stanley's and Ms. Erickson's training and experience could provide a reliable basis for their testimony despite their lack of expertise in plasma donation. *See* ECF No. 137 at PageID.10434 (noting that "the collection of blood and its constituent parts necessarily involves the application of a minimum level of specialized knowledge" and "like the typical medical patient at a diagnostic facility, the typical plasma donor must rely on the expertise of the donation facility in designing and administering a safe collection procedure"). The second was whether Mr. Stanley's and Ms. Erickson's testimony would help the jury understand a disputed issue of fact or would simply spoon-feed it conclusions that it could reach on its own. *Id.* at PageID.10435 (noting that the Sixth Circuit had already "held that the lay testimony of Sylvia Roberts, who testified that Plaintiff swiveled in her chair and then fell, would allow a reasonable jury 'to conclude that the chair's swivel caused [Plaintiff] to fall'" (quoting *BioLife*, 834 F. App'x at 199)).

On October 13, 2021, this Court conducted a three-hour *Daubert* hearing to answer its lingering questions. During the hearing, counsel and this Court extensively examined Mr. Stanley and Ms. Erickson regarding their credentials, expertise, and the bases for their opinions. Having carefully considered their responses, this Court is ready to decide Defendants' pending motions.

## II.

The first issue is whether the testimony of Plaintiff's experts is admissible.

### A.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

In essence, Rule 702 assigns the district court "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"—a kind of "gatekeeping role." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In performing this role, district courts often consider several factors that the *Daubert* Court identified, including whether the expert's methods are testable and subject to peer review. *Id.* at 593–94; *see also United States v. Bonds*, 12 F.3d 540, 558 (6th Cir. 1993) (identifying and discussing the so-called "*Daubert* factors"). But importantly, the *Daubert* factors "do not constitute 'a definitive checklist or test'" and do not apply in every case. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 593). "Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142. Stated differently, "[t]he gatekeeping inquiry is context-specific and 'must be tied to the facts of a particular case.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007) (quoting *Kumho Tire*, 526 U.S. at 142).

In this case, Plaintiff's experts propose to testify based on their specialized experience and training rather than on some empirical testing. This is not unusual, given that, "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *See Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendment). But the reliance on experience rather than

empirical testing does require a slightly different analysis. *See First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (finding *Daubert* factors "unhelpful" where expert's testimony was based on his "own practical experiences throughout forty years in the banking industry"). Rather than asking whether their testimony is "falsifiable," *see Daubert*, 509 U.S. at 593, this Court must determine whether Plaintiff's experts have adequately explained "how [their] experience leads to the conclusion[s] reached . . . and how that experience is reliably applied to the facts." *See Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendment).

**B.**

Plaintiff's only remaining claim is for negligence. *See* ECF No. 1 at PageID.12–13. In Michigan, a negligence claim has four elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 (Mich. 2000) (footnote omitted). The Sixth Circuit has already held that BioLife owed Plaintiff "a duty to use 'reasonable care' while operating [its plasma donation] center." *Good v. BioLife Plasma Servs., L.P.*, 834 F. App'x 188, 194 (6th Cir. 2020). So, the question here is whether Mr. Stanley and Ms. Erickson can offer reliable and relevant testimony as to the other three elements: breach, causation, and damages.

**i.**

Mr. Stanley and Ms. Erickson both intend to testify regarding breach and causation and to offer similar opinions. As to breach, both experts would opine that (1) BioLife should have asked Plaintiff about prior adverse reactions before collecting the capillary sample, and that (2) BioLife should have collected the capillary sample with Plaintiff seated in a low, three-armed, non-swiveling chair and with the collecting employee positioned directly adjacent to Plaintiff. *See*

Stanley Report, ECF No. 125-2 at PageID.10140; Erickson Report, ECF No. 125-3 at PageID.10150. As to causation, both experts would opine that (1) Plaintiff's adverse reaction was foreseeable, and that (2) Plaintiff's injury likely would have been avoided but for BioLife's failure to collect Plaintiff's medical history and seat her in a safe position. *Id.*

Defendants argue that neither expert would offer scientifically reliable testimony because neither has any experience in the plasma-donation setting. *See* ECF No. 115 at PageID.9178–79, 9183–84. Defendants also argue that neither expert has adequately explained how his or her experience led them to their opinions. *See id.* at PaeID.9181, 9183. Further, Defendants contend that Plaintiff's experts have not conducted any empirical testing or otherwise verified their opinions. *See id.* at PageID.9180, 9184.

### ii.

Having carefully considered the experts' responses at the *Daubert* hearing, this Court finds Defendants' arguments unpersuasive.

First, insofar as Defendants' arguments constitute a "backdoor attack on the experts' qualifications,"[6] *see* Pl.'s Resp. to Defs.' *Daubert* Mot., ECF No. 125 at PageID.10126, both Mr. Stanley and Ms. Erickson are highly qualified medical professionals. Mr. Stanley is a regional manager for an industry-leading commercial laboratory, Quest Diagnostics, and is therefore responsible for overseeing and training hundreds of phlebotomists. *See* Oct. 13, 2021 Hr'g Tr. at 4–7;[7] ECF No. 125-2 at PageID.10136. He is also a certified phlebotomist himself and has

---

[6] Although this Opinion largely addresses the reliability and relevancy of the anticipated testimony, Rule 702 also requires that experts be "qualified as an expert by knowledge, skill, experience, training, or education." FED. R. EVID. 702; *see also United States v. LaVictor*, 848 F.3d 428, 441 (6th Cir. 2017) ("For expert testimony to be admissible, the court must find the expert to be: (1) qualified; (2) her testimony to be relevant; and (3) her testimony to be reliable.").

[7] Upon this Court's request, the Court Reporter prepared a preliminary transcript of the *Daubert* hearing. She has not completed or docketed a full transcript because the parties have not ordered one.

personally collected between 50 and 100 capillary samples. *See* Oct. 13, 2021 Hr'g Tr. at 6. Similarly, Ms. Erickson is a certified phlebotomist with 28 years of experience. *Id.* at 77. Ms. Erickson also teaches blood-collection procedures to phlebotomy students and previously served as chairperson of the Clinical & Laboratory Standards Institute (CLSI) Standards Document Development Committee for Capillary Blood Specimen Collections.[8] ECF No. 125-3 at PageID.10145. In sum, both experts are highly credentialed and qualified to testify about the collection of capillary samples and the procedures that ordinarily accompany it.

Second, despite their lack of experience with plasma donation, both experts possess decades of specialized training and experience in phlebotomy, including the collection of capillary samples. It is well-settled that an expert may opine on a subject despite a lack of experience with it so long as her opinion is based on generally accepted principles. *See Redmond v. United States*, 194 F. Supp. 3d 606, 616 (E.D. Mich. 2016) (noting that expert's testimony may be admitted on subjects with which the expert has no experience provided that testimony "is based on the application of generally accepted principles of [the expert's] discipline and flow from his investigation of the facts of the case"); *Hixon v. TVA Bd. of Dirs.*, No. 1:19-CV-120, 2021 WL 4077902, at *4 n.5 (E.D. Tenn. Sept. 7, 2021) ("Where a witness has general expertise in a broad area but is not a specialist in the particular aspect of the field involved in the case, most courts find that the lack of specialization goes to the weight of the testimony, not its admissibility.").

During the *Daubert* hearing, Plaintiff's experts stated that their training is generally applicable to the collection of capillary samples, regardless of where the sample is collected. *See* Oct. 13, 2021 Hr'g Tr. at 8–9, 80–81. Defendants dispute that assertion, arguing that Plaintiff's

---

[8] According to Ms. Erickson's declaration, CLSI is an organization that provides industry guidance and training within the field of phlebotomy. ECF No. 125-3 at PageID.10145.

experts have failed to consider important differences between patients visiting medical centers and donors visiting plasma-donation centers. *See* Defs.' Reply, ECF No. 134 at PageID.10382–83.

But the failure to consider those differences does not mean that their testimony is unreliable. Rather, it means that their testimony might be less credible than the testimony of other experts.[9] At bottom, Defendants' argument is that plasma-donation centers should be subject to a different standard of care than medical centers due to differences between their operations. That Plaintiff's experts disagree is not a reason to exclude them. Ultimately, it is up to the jury to decide whether Defendants fulfilled their duty of care or breached it.[10] *See Case v. Consumers Power Co.*, 615 N.W.2d 17, 21 (Mich. 2000) ("It is [the jury's] province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs." (quoting *Grand Trunk R.R. Co. of Can. v. Ives*, 144 U.S. 408, 417 (1892))).

Third, as to Defendant's claim that the experts have not substantiated their opinions, it must be remembered that the reliability inquiry is "tied to the facts of a particular case." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007). Naturally, it is more difficult

---

[9] The same point applies to Plaintiff's experts' (apparent) decision not to consider certain medical literature. As acknowledged by the Sixth Circuit on appeal, one of Defendant's experts, Dr. Rosemarie Figueroa, "pegged the risk [of fainting from a capillary sample] at somewhere below 0.1 percent." *Good v. BioLife Plasma Servs., L.P.*, 834 F. App'x 188, 197 (6th Cir. 2020). That testimony remains uncontradicted. Although Plaintiff's experts need not consider that testimony in formulating their opinions, the jury is free to consider it when weighing Plaintiff's experts' testimony and deciding whether Plaintiff's injury was reasonably foreseeable.

[10] To the extent Defendants argue that Plaintiff's experts cannot testify because their specific standard of care would conflict with the industry standard for plasma-donation centers, Defendants are mistaken. In Michigan, it is well-settled that "compliance with governmental and industrial standards does not preclude a trier of fact from finding certain conduct to be negligent." *Owens v. Allis-Chalmers Corp.*, 326 N.W.2d 372, 375 (Mich. 1982); *Hill v. Husky Briquetting, Inc.*, 223 N.W.2d 290, 291 (Mich. 1974) (en banc); *Elsasser v. Am. Motors Corp.*, 265 N.W.2d 339, 342 (Mich. Ct. App. 1978). Rather, compliance with an industry standard is evidence of reasonableness that a jury may consider in deciding whether the defendant breached its duty of care. *See Elsasser*, 265 N.W.2d at 342.

to explain why a person's exposure to polychlorinated biphenyls caused her lung cancer than it is to explain why a certain furniture arrangement would have prevented her from falling. *Cf. Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997) (affirming exclusion of expert testimony as to cause of small-cell lung cancer where testimony was not adequately supported by proffered studies).

Here, Mr. Stanley stated during the *Daubert* hearing that he believed a three-armed, non-swiveling chair would have prevented Plaintiff's injury because he had previously dealt with patients fainting during blood collection. *See* Oct. 13, 2021 Hr'g Tr. at 70–71; *see also id.* at 87 (Ms. Erickson recounting similar experience). His first-hand experience of how the arrangement of a chair and phlebotomist prevented a patient from falling would seem both sufficiently reliable and helpful for the jury, even if he lacks expertise in biomechanics.

Importantly, however, Plaintiff's experts cannot be allowed to spoon-feed conclusions to the jury that it can reach on its own. As this Court previously noted, "testimony that does no more than 'tell the jury what result to reach . . . hardly can be viewed as being helpful to the jury.'" ECF No. 137 at PageID.10435 (quoting *Jesa Enters. v. Thermoflex Corp.*, 268 F. Supp. 3d 968, 973 (E.D. Mich. 2017)).

Here, the risk of spoon-feeding the jury is highest with the issue of but-for causation, as the average person is likely to understand that a non-swiveling chair is safer than a swiveling chair. *See Good*, 834 F. App'x at 199 (relying on lay testimony of Sylvia Roberts to find genuine issue of material fact with respect to causation). Even so, both of Plaintiff's experts have specific experience with patients fainting during blood collection, and that specialized experience would likely help the jury understand *how* a different arrangement might have prevented Plaintiff's injury. At trial, this Court will ensure that Plaintiff's experts do not stray from the limits of their expertise and will carefully instruct the jury as to the proper consideration of their testimony.

Having established that Plaintiff's experts have a reliable basis for their testimony, Defendants' remaining concerns (e.g., the lack of empirical testing) are relevant only to the weight of the testimony and should be raised, if at all, on cross-examination. *See In re E. I. Du Pont De Nemours & Co. C-8 Pers. Inj. Litig.*, 337 F. Supp. 3d 728, 738 (S.D. Ohio 2015) (noting that the *Daubert* inquiry is "not intended to supplant the adversary system or the role of the jury," and that "[a]rguments regarding the weight to be given any testimony or opinions of an expert witness are properly left to the jury" (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 531–32 (6th Cir. 2008))).

For these reasons, Defendant's *Daubert* Motion will be denied, and consistent with this Opinion and subject to further order of this Court, Mr. Stanley and Ms. Erickson will be permitted to testify regarding BioLife's procedures and the cause of Plaintiff's injury.

### III.

The next issue is whether Defendants should be permitted to file a second motion for summary judgment. "A party must obtain leave of court to file more than one motion for summary judgment." E.D. Mich. LR 7.1(b)(2). The decision of whether to grant leave is committed to the sound discretion of the district court. *See Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 670 n.6 (6th Cir. 2006).

Defendants state that their second motion for summary judgment would be limited to two arguments: "1. That Plaintiff cannot present admissible evidence of causation-in-fact to survive summary judgment; and 2. That Plaintiff's alleged injuries were not the natural and probable consequence of Defendants' conduct." ECF No. 124 at PageID.10101. Their basic assumption is that once Plaintiff's experts are excluded, this Court can resolve the elements of but-for and proximate cause as a matter of law. *See id.* at PageID.10106–07.

Immediately, Defendants hit a roadblock. As explained, Plaintiff's experts will not be excluded. *See supra* Section II.B. So, insofar as their Motion is premised on the exclusion of Plaintiff's experts, it must be denied.

But even if Plaintiff's experts were excluded, Defendants have not shown that another round of summary judgment would prove fruitful. First, the Sixth Circuit has already suggested that Sylvia Robert's lay testimony about the swiveling chair could be enough to establish but-for cause, *see Good*, 834 F. App'x at 199, and Michigan does not require plaintiffs to introduce expert testimony in a simple negligence action, *Lince v. Monson*, 108 N.W.2d 845, 847 (Mich. 1961) (noting that juries are usually capable of resolving ordinary negligence claims without expert testimony).

Second, despite Defendants' repeated assertion to the contrary, proximate cause is not a question of law. *See* ECF No. 124 at PageID.10107. Indeed, unlike duty, which courts "must" decide as a matter of law, *Hill v. Sears, Roebuck & Co.*, 822 N.W.2d 190, 195 (Mich. 2012), "[p]roximate cause is usually a factual issue to be decided by the trier of fact," *Dawe v. Bar-Levav & Assoc. (On Remand)*, 808 N.W.2d 240, 249 (Mich. Ct. App. 2010). A court may only decide proximate cause when "the facts bearing on proximate cause are not disputed" and "reasonable minds could not differ" as to the result. *Id.*; *see also Hunley v. DuPont Auto.*, 341 F.3d 491, 500 (6th Cir. 2003) (deciding proximate cause under Michigan law because "reasonable minds could not disagree with respect to the resolution of [the] issue").

In short, even without the testimony of Plaintiff's experts, it seems relatively unlikely that Defendants could meet their burden at the summary-judgment stage. Accordingly, there is little reason to waste additional resources with more summary-judgment briefing.

For these reasons, Defendants' Motion for Leave will be denied.

## IV.

Accordingly, it is **ORDERED** that Defendants' Motion to Exclude the Testimony of Sean T. Stanley and Nancy Erickson, ECF No. 115, is **DENIED**.

Further, it is **ORDERED** that Defendant's Motion for Leave to File Second Motion for Summary Judgment, ECF Nos. 124, 129, is **DENIED**.

Dated: January 19, 2022                              s/Thomas L. Ludington
                                                                  THOMAS L. LUDINGTON
                                                                  United States District Judge