UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TENLEY MCLAUGHLIN GOOD,

        Plaintiff,                                    Case No. 1:18-cv-11260

        v.                                            Honorable Thomas L. Ludington
                                                    United States District Judge

BIOLIFE PLASMA SERVICES, L.P. and
SHIRE US, INC.,

        Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION AND
DENYING DEFENDANTS' MOTION FOR LEAVE TO FILE REPLY**

    One drop of blood set this case in motion. Screening her for a plasma donation, Sylvia Roberts pricked Plaintiff Tenley Good's finger to collect a capillary sample. Within seconds, Plaintiff fainted, fell from the swivel chair, and then hit her head. One week later, she left the hospital diagnosed with postconcussive symptoms, hearing loss, and personality changes.

    Plaintiff is suing the plasma-donation center for negligence and has two doctors who treated her. Dr. Thomas O'Hara, who passed away in November 2020, was Plaintiff's treating neurosurgeon and diagnosed her with a basilar skull fracture. Dr. Katherine Heidenreich is an otolaryngologist who diagnosed Plaintiff with possible superior semicircular canal dehiscence (SSCD).[1] Defendant's motion to limit the testimony of both doctors was denied.

    Defendants have since filed a motion for reconsideration arguing error in the denial of their motion and a motion for leave to reply to it. Both will be denied.

---

[1] Superior semicircular canal dehiscence (SSCD) "is a medical condition of the inner ear causing hearing and balance symptoms" and "is caused by a thinning or a complete absence of the part of the temporal bone overlying the superior semicircular canal of the vestibular system." 36 No. 10 Verdicts, Settlements & Tactics NL 31.

**I.**

In October 2015, Plaintiff Tenley McLaughlin Good went to donate plasma at a center operated by Defendant BioLife Plasma Services. *See Good v. Biolife Plasma Servs., L.P.*, No. 18-11260, 2020 WL 736005, at *3 (E.D. Mich. Feb. 13, 2020). Plaintiff sat in a swivel chair across the counter from BioLife employee Sylvia Roberts for the screening process. Roberts pricked Plaintiff's finger to collect a sample of her blood capillaries, but Plaintiff fainted within moments. Roberts tried to hold Plaintiff upright from across the counter, but Plaintiff fell to the ground. *Id.* Plaintiff spent a week in the hospital with postconcussive symptoms and now complains of hearing loss and personality changes. *Id.* at *3–4.

In March 2018, Plaintiff sued BioLife and its parent company under two theories of liability.[2] First, she claims Defendants negligently failed to take her medical history before collecting the capillary sample. *See id.* at *4. If they would have collected her medical history, she argues, then they would have learned what she knew: that she has fainted when seeing blood. *See* ECF No. 37 at PageID.2527–28. Second, she claims Defendants negligently positioned her in a relatively high swivel chair too far from Roberts to prevent the fall. *See Good*, 2020 WL 736005, at *4, *7.

In August 2019, the parties filed cross-motions for summary judgment. After carefully reviewing the record, this Court granted summary judgment for Defendants. The problem with Plaintiff's negligent-history theory was a lack of evidence that Defendants failed to take her medical history. *Id.* at *6. Roberts testified that she took Plaintiff's medical history during a vein

---

[2] Plaintiff also sued for medical malpractice but later stipulated to dismiss it. *See* ECF Nos. 1 at PageID.11; 28.

check[3] and—though Plaintiff testified that she did not remember the vein check—Plaintiff later testified that she did remember not being asked about her history.

This Court gave no weight to Plaintiff's later affidavit because it contradicted her earlier deposition testimony that she could not remember the vein check. *Id.* Similarly, after reviewing the parties' expert reports, this Court found that, based on the record, the statistical probability of Plaintiff fainting from a capillary sample was "so unlikely that failing to anticipate it was [not] a breach of the standard of care" as a matter of law. *Id.* at *8.

But the Sixth Circuit saw things differently. Regarding the negligent-history theory, the Sixth Circuit found no "direct contradiction," leaving a triable question of fact instead. *Good v. BioLife Plasma Servs., L.P.*, 834 F. App'x 188, 196 (6th Cir. 2020) (unpublished). With respect to negligent positioning, the Sixth Circuit concluded that, though "small," the risk of fainting from a capillary-sample collection was "foreseeable" because "BioLife sees around 100,000 donors every year." *Id.* at 196–97. Therefore, it held, a reasonable juror could find BioLife negligent for not providing Plaintiff with safer furniture. *Id.* at 198.

The Sixth Circuit also addressed causation because Defendants raised it as an alternative basis for affirming summary judgment. *Id.* Based on the expert reports and Roberts's testimony with respect to the swiveling chair, the Sixth Circuit concluded that jurors could, and should, determine whether not having a better chair was the but-for and legal cause of Plaintiff's injuries. *Id.* at 198–99. Then it reversed summary judgment for Defendants and remanded the case here for further proceedings. *Id.* at 200.

---

[3] The "vein check" is when a BioLife employee would examine a potential donor's veins to verify their suitability for donation. *See Good v. Biolife Plasma Servs., L.P.*, No. 18-11260, 2020 WL 736005, at *2 (E.D. Mich. Feb. 13, 2020). Julida Reeves performed Plaintiff's vein check and testified that she would regularly ask the donor about prior adverse reactions. *Id.*

The parties have since filed several motions *in limine*. ECF No. 154. Relevant here is their since-denied motion to limit the expert testimony of Drs. O'Hara and Heidenreich. *See id.* Dr. O'Hara was Plaintiff's treating neurosurgeon and diagnosed her with a basilar skull fracture. Dr. Heidenreich diagnosed Plaintiff with possible superior semicircular canal dehiscence (SSCD).

At issue now is Defendants' motion for reconsideration of the denial of their motion, ECF No. 157, and their motion for leave to reply to their motion for reconsideration. ECF No. 160.

## II.

Motions for reconsideration of nonfinal orders are disfavored and may be granted in only three circumstances: (1) a mistake that changes the outcome of the prior decision, (2) an intervening change in controlling law that warrants a different outcome, or (3) new facts that could not have been previously discovered warrant a different outcome. E.D. Mich. LR 7.1(h)(2).

### A.

Defendants have not introduced an intervening change in law or previously undiscoverable fact. *See generally* ECF No. 157.

Thus, the remaining question is whether Defendants have identified any mistakes. For purposes of reconsideration, mistakes and outcomes are mutually exclusive. Law and facts that were not in the record or the disputed order are not cognizable under Local Rule 7.1(h)(2)(A), because they were not "before" the court. True, "some critical [laws and facts] are neither placed 'before' the [court] nor passed through [its] formal internal procedures." *See* Matthew N. Preston II, *The Tweet Test: Attributing Presidential Intent to Agency Action*, 10 BELMONT L. REV. 1, 12 n.61 (2022) (discussing the implications of the word "before" in the context of administrative records). However, it would be "unrealistic" to expect courts to know the entire universe of law at all times. *Cf. id.* at 12 & n.61 (noting that judicial review "is ordinarily limited to . . . the existing

administrative record" (quoting *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019))). The parties—not the court—must provide the laws and the facts for the relief they seek. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

In sum, the purported mistake must be some substantive error in the court's legal analysis or factual findings based on the record at the time of the decision—it cannot be the outcome itself. *McNeal v. Found. Radiology Grp.*, No. 1:22-CV-10645, 2022 WL 17367184, at *1 (E.D. Mich. Oct. 20, 2022) (explaining that the "mistake" must "change[] the outcome" (quoting E.D. Mich. LR 7.1(h)(2))).

To that end, Defendants argue this Court should exclude

(1) O'Hara's testimony that Plaintiff suffered a skull fracture;
(2) Heidenreich's opinion regarding SSCD;
(3) O'Hara's skull-fracture opinion; and
(4) Plaintiff's comments to Heidenreich about a skull-fracture diagnosis.

Each argument will be addressed in turn.

**B.**

Defendants argue this Court applied the wrong law to Dr. O'Hara's testimony about Plaintiff's skull fracture. They claim a hypothesis is an insufficient basis for an opinion, because a medical opinion must be more true than not. ECF No. 157 at PageID.11249–51.

But this argument "do[es] not warrant consideration[,]" because "this Court already considered and rejected" it. *Yatooma v. Birch Run Twp.*, No. 1:22-CV-10870, 2022 WL 3701164, at *2 (E.D. Mich. Aug. 26, 2022) (citing *Fischer v. United States*, 589 F. Supp. 3d 726, 728 (E.D. Mich. 2022)); ECF No. 114 at PageID.9118–21; *see also* ECF No. 159 at PageID.11284; *Fischer*, 589 F. Supp. 3d at 728 ("A motion for reconsideration that merely reasserts the same facts and legal arguments previously asserted is not proper unless there was some defect in the first hearing by which the court and the parties have been misled.") (collecting cases).

- 5 -

Yet that argument would fail on the merits too. This Court held that Dr. O'Hara described his opinion as a "supposition" because he diagnosed Plaintiff based on her symptoms rather than CAT and MRI results—not because he was uncertain. ECF No. 154 at PageID.11217. Dr. O'Hara even clarified that he held his skull-fracture opinion "to a reasonable degree of medical certainty." ECF No. 43-4 at PageID.4076. As this Court already found, Defendants' criticisms go to the weight, not admissibility of Dr. O'Hara's testimony. ECF No. 154 at PageID.11217. Defendants have not identified an error in reasoning; they merely disagree with the outcome.

Because Defendants merely rehash the same argument without identifying any mistake, Defendants' motion will be denied with respect to Dr. O'Hara's conclusion that Plaintiff suffered a skull fracture. E.D. Mich. LR 7.1(h)(2).

## C.

Defendants argue Dr. Heidenreich neither established the cause of Plaintiff's hearing loss nor diagnosed it with a reasonable degree of probability. ECF No. 157 at PageID.11244. Plaintiff responds that Dr. Heidenreich is her treating physician and, therefore, may testify to the cause of the injuries that she treated. ECF No. 159 at PageID.11288. Dr. Heidenreich based her diagnostic impression on her review of Plaintiff's medical records, including her postinjury testing. *See* ECF No. 116-14 at PageID.9669.

This second argument also does not warrant consideration because this Court already considered and rejected" it. *Yatooma v. Birch Run Twp.*, No. 1:22-CV-10870, 2022 WL 3701164, at *2 (E.D. Mich. Aug. 26, 2022) (citing *Fischer v. United States*, 589 F. Supp. 3d 726, 728 (E.D. Mich. 2022)); ECF No. 154 at PageID.11226 ("Doctor Heidenreich based her diagnostic impression on her review of Plaintiff's medical records, including her post-injury testing." (citing ECF No. 116-14 at PageID.9669)).

Yet it too would fail on the merits. Defendants assert Dr. Heidenreich's testimony is analogous to that of Dr. Noftz in *Johnson v. Memphis Light Gas & Water Division*, 695 F. App'x 131, 142–43 (6th Cir. 2017) (unpublished). Noftz's opinion that a decedent died from cardiac dysrhythmia was an inadmissible working hypothesis because did not rule out common causes of sudden cardiac death. *Id.* By contrast, Dr. Heidenreich's testimony is more analogous to that of a Dr. Laboy in *Johnson*. *Compare id.* at 142–43 ("Dr. Laboy did here what Dr. Noftz failed to do . . . . Dr. Laboy ruled out the common causes of sudden cardiac death by conducting an autopsy, performing toxicology tests, running a vitreous fluid panel, and considering relevant environmental factors just prior to death."), *with* ECF No. 154 at PageID.11226 ("Doctor Heidenreich based her diagnostic impression on her review of Plaintiff's medical records, including her post-injury testing." (citing ECF No. 116-14 at PageID.9669)).

Because Defendants merely rehash the same argument without identifying any mistake, Defendants' motion will be denied with respect to Dr. Heidenreich's SSCD testimony. E.D. Mich. LR 7.1(h)(2).

### D.

Defendants next argue Dr. Heidenreich's and Dr. O'Hara's testimony is not individually admissible so it cannot be jointly admissible. ECF No. 157 at PageID.11254. Plaintiff responds that this issue is addressed by analyzing the two prior issues. ECF No. 159 at PageID.11288–89.

As discussed above, both Dr. Heidenreich and Dr. O'Hara's testimony is independently admissible. *See* discussion *supra* Sections II.B, II.C. Thus, Defendants' argument will be denied.

Because Defendants merely rehash the same argument without identifying any mistake, Defendants' motion will be denied with respect to whether Dr. Heidenreich's medical records can support Dr. O'Hara's skull-fracture opinion. E.D. Mich. LR 7.1(h)(2).

**E.**

Finally, Defendants argue one of Plaintiff's comments to Dr. Heidenreich is inadmissible. ECF No. 157 at PageID.11245. Specifically at issue is the Plaintiff's statement that she "was told she likely had a basilar skull fracture." ECF No. 116-14 at PageID.9668.

Previously, this Court found that "both (1) the statement from the unnamed provider to Plaintiff that she 'likely had a basilar skull fracture' and (2) Plaintiff's repetition of that statement to Dr. Heidenreich constitute hearsay." ECF No. 154 at PageID.11227. Yet this Court found that both statements were admissible as "statements made for medical diagnosis or treatment." ECF No. 154 at PageID.11227 (citing FED. R. EVID. 803(4)). Plaintiff responds that this holding was correct. ECF No. 159 at PageID.11289.

On reconsideration, this holding is the correct result but applies the wrong law. Defendants are correct that Plaintiff's repetition of another physician's diagnosis would generally be inadmissible hearsay within hearsay. *See* FED. R. EVID. 805 (requiring each statement within a combined statement to be independently admissible under an exception to the rule against hearsay). Both statements are hearsay. *See Back v. Nestlé USA, Inc.*, 694 F.3d 571, 577 n.1 (6th Cir. 2012) (holding that hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). Under one exception, hearsay is admissible if it "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." FED. R. EVID. 803(4). But "the hearsay exception set forth in Rule 803(4) applies only to statements made by the one actually seeking or receiving medical treatment," not statements by consulting or treating physicians. *Field v. Trigg Cnty. Hosp., Inc.*, 386 F.3d 729, 736 (6th Cir. 2004). This exception does not include the statement

from the unnamed provider diagnosing Plaintiff. So both statements are inadmissible hearsay. FED. R. CIV. P. 805. Yet Dr. Heidenreich's statement that Plaintiff said an unnamed provider diagnosed her with a skull fracture is admissible to aid the jury in evaluating Dr. Heidenreich's opinions.

"Generally, a treating physician may provide expert testimony regarding a patient's illness, the appropriate diagnosis for that illness, and the cause of the illness." *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir.2009). And "[a]n expert may base an opinion on [inadmissible] facts or data in the case that the expert has been made aware of or personally observed[ i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." FED. R. EVID. 703. But such inadmissible facts and data may not be disclosed to the jury unless "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.*

As a treating physician, *see* FED. R. CIV. P. 26(a)(2), Dr. Heidenreich may base her opinion testimony about a medical diagnosis on another physician's medical diagnosis if other otolaryngologists would reasonably rely on such information, *see* FED. R. EVID. 703. They would. *See* § 8:75 STATEMENTS FOR PURPOSES OF MEDICAL DIAGNOSIS OR TREATMENT, 4 FEDERAL EVIDENCE § 8:75 (4th ed. 2022) (discussing "the process of providing conventional medical care, which requires doctors to learn basic facts from patients"); *see also Counts v. Gen. Motors, LLC*, 2022 WL 2078023, at *26 (E.D. Mich. June 9, 2022) ("Far from *ipse dixit*, basing an expert opinion on another expert's opinion reflects sound judgment. Indeed, a benchmark of any sound analysis is citing or critiquing the opinions of other expert opinions."). And there are no indicia of unreliability in Plaintiff's statement to Dr. Heidenreich.

And Dr. Heidenreich may testify to the unnamed physician's diagnosis. There is no apparent prejudicial effect from the unnamed physician's statement. Nor do Defendants provide

one. So the prejudicial effect of the unnamed physician's statement is substantially outweighed by the assistance that it would provide the jury in understanding Dr. Heidenreich's diagnosis that Plaintiff has possible SSCD.

Because Defendants have identified a mistake in the law that this Court applied in the prior order, the issue has been reconsidered. But the double-hearsay statements are admissible. *See* FED. R. EVID. 703. So the Motion for Reconsideration will be denied.

### III.

Defendants have also filed a motion for leave to file a reply to their motion for reconsideration, arguing Plaintiff raises new arguments in her response. ECF No. 160 at PageID.11390. Plaintiff responds that none of those arguments are new. *See* ECF No. 161 at PageID.11398.

Defendants' Motion for Leave will be denied. "No response to [a] motion [for reconsideration] and no oral argument are permitted unless the court orders otherwise." E.D. Mich. LR 7.1(h)(3). No reply is needed. Plaintiff's arguments are not new. And, even if they were, this Court did not rely on them in reaching the above conclusions.

### IV.

Accordingly, it is **ORDERED** that Defendants' Motion for Reconsideration, ECF No. 157, is **DENIED**.

Further it is **ORDERED** that Defendants' Motion for Leave to File Reply in Support of Motion for Reconsideration, ECF No. 160 is **DENIED**.

**This is not a final order and does not close the above-captioned case.**

Dated: December 20, 2022            s/Thomas L. Ludington
                                    THOMAS L. LUDINGTON
                                    United States District Judge